UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHANDY BOUNKHOUN
                PLAINTIFF
-VS-                                              SUMMONS

STEVEN E. BARNES, ESQ., ROSS M. CELLINO, ESQ.,
CHRISTOPHER D. D'AMATO, ESQ. AND CELLINO
AND BARNES, P.C.

                                      DEFENDANTS

To the above named Defendants:

      Each one of you named above is summoned and required to serve an answer to the complaint that was served along with this summons. Each of you must serve your answer to this complaint within 21 days of service of this summons on you. The 21-day period for your answer does not include the day on which you were served with this summons.

      Your answer to the complaint must be served on Patrick J. Burke, Esq., whose address is 16 West Main Street, Suite 100, Rochester, New York 14614. Patrick J. Burke, Esq. is the attorney for Chandy Bounkhoun in this matter.

      If you fail to serve a timely answer to the complaint, judgment by default will be taken against you for the relief demanded in the complaint, regardless of what happens with or to any of the other defendants listed above.

Dated: July 10, 2015

                                                Patrick J. Burke, Esq.
                                                Attorney for Plaintiff
                                                16 West Main Street Suite 100
                                                Rochester, New York 14614
                                                Telephone: (585)232-5958

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHANDY BOUNKHOUN
                            PLAINTIFF
   -VS-                                                                     COMPLAINT

STEVEN E. BARNES, ESQ., ROSS M. CELLINO, ESQ.,
CHRISTOPHER D. D'AMATO, ESQ. AND CELLINO
AND BARNES, P.C.

                            DEFENDANTS

---

## JURISDICTION AND VENUE

1. Plaintiff Chandy Bounkhoun is a resident of the State of Texas and the defendants Steven Barnes, Ross Cellino, Christopher D'Amato are residents of the State of New York and defendant Cellino and Barnes, P.C. is a professional corporation incorporated under the laws of the State of New York, with its principal place of business located in Buffalo, New York.

There is complete diversity of citizenship between plaintiff and all defendants and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy five thousand dollars. ($75,000.00).

2. Venue in this District is proper under 28 USC§ 1391(b), (c) and (d).

3. Plaintiff demands a JURY TRIAL of each and every one of her claims as plead herein pursuant to Federal Rules of Civil Procedure §38(b).

## PARTIES INVOLVED

4. The plaintiff Chandy Bounkhoun was injured in an incident on June 7, 2008 when the lawnmower operated by her landlord threw out a rock which struck Ms. Bounkhoun in the eye leaving her without sight in one eye.

5. That upon information and belief and at all times hereinafter mentioned the defendant Steven Barnes, Esq. was and is a partner in the law firm of Cellino and Barnes, P.C. a professional corporation and who upon further information and belief is a principal shareholder in the firm of Cellino and Barnes, P.C., the firm which contracted with Christopher D'Amato, Esq. and who assigned Mr. D'Amato to handle the personal injury action for which the plaintiff engaged the firm of Cellino and Barnes, P.C. to handle as a result of her injury.

6. That upon information and belief and at all times hereinafter mentioned Ross Cellino, Esq. was and is a partner in the law firm of Cellino and Barnes, P.C. a professional corporation and

who upon further information and belief is a principal shareholder in the firm of Cellino and Barnes, P.C., the firm which contracted with Christopher D'Amato to handle the personal injury action for which the plaintiff engaged the firm of Cellino and Barnes, P.C. to handle as a result of her injury.

7. That upon information and belief and at all times hereinafter mentioned defendant Christopher D'Amato, Esq. was an attorney at law licensed to practice in the State of New York.

8. That upon information and belief Cellino and Barnes, P.C. is a professional corporation incorporated under the laws of the State of New York.

9. That upon information and belief attorneys such as defendant D'Amato have contractual arrangements with the firm of Cellino and Barnes, P.C., and are held out to the general public in their advertisements as members of the "team of trial lawyers" at Cellino and Barnes, when upon further information and belief the firm designates them as independent contractors for tax and unemployment insurance purposes.

10. That such an arrangement created an irreconcilable conflict of interest for the attorney who is chosen by the principals at Cellino and Barnes, P.C. to handle individual cases.

11. That upon information and belief individuals who retain Cellino and Barnes, P.C. and the plaintiff specifically were and are not advised of the business arrangement that the firm has with the attorney assigned to handle their case.

## FACTUAL BACKGROUND

12. That subsequent to her injury, the plaintiff Chandy Bounkhoun retained the law firm of Cellino and Barnes, P.C. to represent her interests.

13. That upon information and belief Cellino and Barnes, P.C. designated Christopher D'Amato, Esq. as the attorney associated with the firm to handle the plaintiff's litigation.

14. That after the completion of discovery the plaintiff was advised that there would be a pre-trial conference held in her case on or about January 27, 2012.

15. The plaintiff Chandy Bounkhoun is Laotian and does not speak English and therefore authorized a friend of her brother, Vicki Thitakham to communicate with Mr. D'Amato about the pre-trial conference and the settlement negotiations.

16. That shortly after the pre-trial conference Christopher D'Amato advised Vicki Thitakham on behalf of Chandy Bounkhoun that there had been a settlement offer of One Hundred Thousand Dollars ($100,000.00) and that the trial court had scheduled a trial to commence in New York State Supreme Court, Erie County on July 9, 2012.

17. That after more than three months of having no communication with Mr. D'Amato about whether anything was happening with the resolution of her case, Chandy Bounkhoun requested Vicki Thitakham to contact Mr. D'Amato, which she did.

18. That on or about June 4, 2012 Vicki Thitakham e-mailed Christopher D'Amato, Esq. to advise him that Chandy Bounkhoun wanted to resolve her case and asked if the judge could get Chandy Bounkhoun the sum of One Hundred Fifty Thousand Dollars ($150,000.00) to settle.

19. That defendant D'Amato only responded to said e-mail by advising the plaintiff on June 5, 2012 that the case was scheduled to go forward to trial on July 9, 2012 and failed to communicate with the plaintiff or her representative about the course and conduct of settlement negotiations.

20. That upon information and belief the defendant D'Amato communicated the plaintiff's desire to settle her case for the sum of One Hundred Fifty Thousand Dollars ($150,000.00) to the defendants Cellino and Barnes.

21. That upon information and belief one or more of the defendants D'Amato, Cellino and Barnes made a determination that the fair value of the plaintiff's case was a multiple of two to three times the amount plaintiff wished to settle for.

22. That upon information and belief the defendants determined that the only way to secure a maximum attorneys fee and return for them for their work on the litigation was to try the case before a jury.

23. The defendants D'Amato, Cellino and Barnes were also aware that any defense verdict for the underlying defendant would result in Cellino and Barnes, P.C. not realistically being able to recoup several thousand dollars in litigation expenses.

24. That upon information and belief when faced with the knowledge of what the plaintiff wanted to settle for and with their assessment of the fair value of the case, the defendants had the option of communicating with the plaintiff through her representative and encouraging her to re-evaluate her settlement demand, or to engage in a clandestine and secretive plot designed to advance their own interests at the expense of the client.

25. That upon information and belief the defendants D'Amato, Cellino and Barnes instead conspired with each other to manipulate the outcome of the plaintiff's case in such a manner so as to maximize their own potential return by minimizing their own risk and maximizing the risk to the plaintiff without advising the plaintiff of their conspiratorial actions and the risks their actions created for the plaintiff.

26. That upon information and belief the defendants took various steps that advanced the purpose of the conspiracy without advising the plaintiff or her designated representative.

27. That upon information and belief the first action taken by the defendants occurred when the defendants Cellino and/or Barnes directed defendant Christopher D'Amato on or about June 21, 2012 to write a settlement demand letter that was patently unrealistic given the circumstances of the plaintiff's case.

28. The demand letter stated that the plaintiff was willing to settle for the policy limits of the One Million Dollars ($1,000,000.00) available to the defendant in the underlying action and that the plaintiff would hold the defendant personally liable for any judgment in excess of $1,000,000.00.

29. That in addition the demand letter accused the insurance carrier of failing to negotiate in good faith.

30. The defendants knew when they issued the demand letter that their demands were patently unrealistic and they made said demands solely for the purpose of subverting any chance of a settlement and to put the case in a trial posture which the plaintiff desperately wanted to avoid.

31. That in response to the settlement demand letter the insurance carrier for the underlying defendant responded that the carrier was acting in good faith as evidenced by their offer and stated that the carrier remained ready, willing and able to engage in settlement negotiations if the defendants would provide them with a reasonable settlement demand.

32. That upon receipt of the carrier's response the defendants all had knowledge that they could settle the plaintiff's case for the sum she requested.

33. That as part of their conspiracy the defendants each and every one of them agreed not to advise the plaintiff of their actions in sending out the demand letter or of the response of the insurance carrier indicating that it remain ready, willing and able to negotiate the plaintiff's claims should the defendants provide a reasonable settlement demand.

34. That after failing to engage in meaningful settlement negotiations as requested by the plaintiff the defendants made the plaintiff and her family travel from Texas to Buffalo for the trial of the action.

35. That upon information and belief the defendant D'Amato approached the plaintiff after jury selection with a paper to sign that he told her was in her best interest to sign.

36. That upon information and belief the paper the plaintiff was advised to sign provided that the most the plaintiff could receive as a result of a jury verdict was the sum of seven hundred fifty thousand dollars ($750,000.00) and the least she could receive would be the sum of twenty five thousand dollars ($25,000.00).

37. That the plaintiff signed the document based upon the advice Mr. D'Amato provided her without any knowledge of the activities the defendants had engaged in regarding plaintiff's case.

38. That upon information and belief the defendants conspired to secure a high-low agreement from the insurance carrier on terms that were favorable to the carrier and very detrimental to the plaintiff so that they could attempt to secure a larger attorneys fee by trying plaintiff's case and limit their risk on any outstanding litigation expenses by agreeing to a very low amount for the lower limit on the high-low agreement.

39. That said agreement was made solely for the benefit of the defendants and without any consideration for the plaintiff.

40. That during the course of the trial Vicki Thitakham advised Mr. D'Amato on numerous occasions that the testimony as being translated by an elderly Laotian translator was not properly reflecting the plaintiff's testimony.

41. That Mr. D'Amato told Ms. Thitakham not to be concerned.

42. That at the conclusion of the trial in the underlying action the jury returned a verdict in favor of the defendant in the underlying action.

43. That when the plaintiff and her representative tried to understand what had happened and requested paperwork from the defendants they were put provided with incomplete documentation.

44. That several months after the jury verdict the plaintiff was finally able to secure copies of correspondence between the defendants and the insurance carrier that showed what actions the defendants had undertaken in response to the plaintiff's request to settle.

## COUNT I
## CONSPIRACY

45. The plaintiff repeats and realleges the allegations contained in paragraphs numbered 1 through 44 as if more fully set forth herein.

46. The defendants, each and every one of them agreed and combined to engaged in a civil conspiracy and commit the unlawful acts as described in this complaint.

47. The defendants, each and every one of them, understood, accepted, and/or explicitly and/or implicitly agreed to the general objectives of their scheme to inflict the wrongs against and/or injury on the plaintiff as described in this complaint.

48. The defendants, each and every one of them acquired, possessed and maintained knowledge of the conspiracy's objectives to inflict wrongs against and/or injury on plaintiff as described in this complaint.

49. The defendants, each and every one of them engaged in a scheme and concealed and secreted the scheme from the plaintiff by violating their fiduciary duties to the plaintiff and providing her with advice that was not designed to serve her interests but their own.

50. The defendants, each and every one of them violated the legitimate rights of the plaintiff by engaging in their scheme.

51. In committing the acts described above, defendants acted with malice toward the plaintiff and in addition to compensatory damages to be assessed by a jury on this trial of this action, the plaintiff is entitled to exemplary damages in such an amount as will sufficiently punish the defendants for their willful and malicious conduct and as will serve to prevent a repetition of such conduct in the future.

## COUNT II
## MISREPRESENTATION

52. The plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

53. That the defendants by failing to keep the plaintiff apprised of their communications with the underlying defendant's insurance carrier and by failing to respond to her inquiries and by advising her that the case needed to be tried before a jury, misrepresented the fact that the case could have been settled by the defendants by engaging in competent settlement negotiations.

54. That the plaintiff relied to her detriment on the false representations of the defendants and the defendants knew that the plaintiff was relying on those representations when they were made.

55. The actions of the aforesaid defendants were intentional, reckless, unwarranted and without any just cause, and were done without the consent of the plaintiff.

56. The damages sustained were caused wholly and solely by reason of the conduct of the defendants without the plaintiff contributing thereto.

57. In committing the acts described above, defendants acted with malice toward the plaintiff and in addition to compensatory damages to be assessed by a jury on this trial of this action, the plaintiff is entitled to exemplary damages in such an amount as will sufficiently punish the defendants for their willful and malicious conduct and as will serve to prevent a repetition of such conduct in the future.

## COUNT III
## VIOLATION OF NEW YORK JUDICIARY LAW §487

58. The plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

59. New York Judiciary Law §487 provides that any attorney who is guilty of any deceit or collusion with the intent to deceive a party is guilty of a misdemeanor and that in addition to the punishment prescribed by the penal law "he forfeits to the party injured treble damages, to be recovered in a civil action."

60. That the defendants herein have engaged in a course of conduct to deceive and defraud the plaintiff of her rightful monies, being untruthful and nefarious in accomplishing their own ends to the prejudice of the plaintiff.

61. That the defendants' failure to engage in meaningful settlement negotiations and failure to utilize their shills on the plaintiff's behalf deprived the plaintiff of monies that rightfully belonged to her.

62. That the aforesaid conduct violates the attorneys duty to his client pursuant to Judiciary Law §487.

63. That pursuant to Judiciary Law §487, defendants are in violation of said law and should forfeit treble damages to the plaintiff herein.

64. That as a result of the violation of their fiduciary obligations to the plaintiff their misconduct and wrongdoing, defendants are liable for treble damages because of their actions herein.

## COUNT IV
## MALPRACTICE

65. The plaintiff realleges and incorporates by reference each preceding paragraph as if full set forth herein.

66. The defendants have held themselves out as professionals possessing exceptional skills, knowledge and ability in the prosecution of personal injury litigation.

67. That the defendants aggressively deviated from the accepted stands of legal professionals in the community in pursuing the settlement of plaintiff's claim.

68. As a result of defendants' gross negligence in handling the plaintiff's claim and without any contributory negligence on the part of the plaintiff, the plaintiff has sustained monetary damages as a result of the negligence of the defendants.

## COUNT V
## GENERAL BUSINESS LAW §349 AND §350

69. The plaintiff realleges the allegations contained in each preceding paragraph as if more fully set forth herein.

70. That upon information and belief, the defendants herein have for several years prior to the time when plaintiff retained the defendants and since that time, have advertised heavily that the

defendants and their "team of trial lawyers" are capable of securing just compensation due an injured party.

71. That the defendants by employing the term "team of trial lawyers" intends to convey to the general public and to the plaintiff that each lawyer assigned to a case is either an associate or a member of the firm.

72. That upon information and belief the defendants have contractual agreements with individual attorneys who are not employees of the firm and who upon further information and belief are compensated on a case by case basis.

73. That the firm by using the term "team of trial lawyers" at Cellino and Barnes is attempting to project a relationship that does not in fact exist and the actual relationship between the assigned attorney, the firm and client creates an irrevocable conflict of interest for the assigned attorney. The assigned attorney has dual loyalties to the firm as an independent contractor and to the client, and those dual loyalties in the underlying case giving rise to this action, were never disclosed to the plaintiff and are never disclosed to the public at large.

74. That upon information and belief the dual loyalties Mr. D'Amato faced in the underlying case giving rise to this action were resolved by Mr. D'Amato when he decided to write the bad faith settlement demand letter as requested by Steven Barnes and/ or Ross Cellino rather than attempt to engage in meaningful settlement negotiations designed to accomplish the plaintiff's objective.

75. That the conduct of the defendants D'Amato, Ross Cellino, Steven Barnes and Cellino and Barnes, P.C. in not disclosing the actual relationship between the assigned attorney and the firm constitutes a deceptive and misleading business practice pursuant to GBL §349 and the advertisements crafted to create the illusion of the attorney assigned as being a member of the firm is a violation of GBL §350.

76. That upon information and belief the practices alleged in this cause of action are also in violation of Ethical Canons and the Disciplinary Rules of the State of New York which each member of the bar is required to observe.

77. That as a result of the conduct of the defendants the plaintiff has been damaged in an amount to be determined upon the trial of this action.

WHEREFORE plaintiff Chandy Bounkhoun requests judgment as follows:

A. For general damages according to proof, but in excess of One Hundred Twenty Five Thousand Dollars on each cause of action plead;

B. For punitive and exemplary damages in an amount to be determined at trial on the plaintiff's first and second and third causes of action;

C. For treble damages on the plaintiff's third cause of action;

D. For costs of suit incurred; and

E. For such other and further relief that the Court may deem just and proper.

Dated: July 10, 2015

    Rochester, New York

Patrick J. Burke, Esq.
Attorney for the Plaintiff
16 West Main St. Suite 100
Rochester, New York 14614