**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

CHANDY BOUNKHOUN,

               Plaintiff,

        v.                                            15-CV-631-A

                                                   **DECISION AND ORDER**

STEVEN E. BARNES, ESQ.;
ROSS M. CELLINO, ESQ.;
CHRISTOPHER D. D'AMATO, ESQ.; and
CELLINO & BARNES, P.C.

               Defendants.
_____

The Plaintiff, Chandy Bounkhoun, alleges that the Defendants—her former attorneys and their law firm—committed legal malpractice and violated New York Judiciary Law § 487 while representing her in a personal injury action. The Plaintiff asserts that, had the Defendants followed her direction to pursue settlement, and had they conveyed to her an offer to continue settlement discussions, she could have recovered a larger sum of money than she ultimately received. The Defendants moved to dismiss the Plaintiff's Judiciary Law § 487 claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and they also moved for sanctions pursuant to Rule 11.

Magistrate Judge Hugh B. Scott, to whom the Court referred this case for all pretrial proceedings, filed a Report and Recommendation (R&R) that recommends (1) granting the Defendants' motion to dismiss the Plaintiff's Judiciary Law § 487 claim, and (2) sanctioning Plaintiff's counsel $2,000. _See_ Docket No. 20; 2017 WL 1331359.

For the reasons stated below, the Court concludes that Defendants have not shown that the New York Court of Appeals would interpret Judiciary Law § 487 in a way that deviates from the holdings of several lower courts in New York State. Thus, the Court

concludes that a criminal conviction for violating Judiciary Law § 487 is not a condition precedent to bringing a civil claim under § 487.  The Court further concludes that the Plaintiff has alleged sufficient facts to state a claim under Judiciary Law § 487.  Finally, the Court concludes that the Plaintiff's allegation of a civil conspiracy is sanctionable under Rule 11, but that the sanctions recommended by the R&R are more than "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(b)(4).

## BACKGROUND

The facts alleged in the complaint—which the Court assumes to be true for purposes of this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—are straightforward. The Plaintiff was blinded in one eye after a lawnmower operated by her landlord propelled a rock towards her face.  The Plaintiff retained Cellino & Barnes P.C. to represent her in a personal injury action against her landlord.  The Plaintiff's case was assigned to Defendant D'Amato, an attorney associated with the firm.  The Plaintiff is Laotian and does not speak English.  Thus, she communicated with D'Amato through her brother's friend.

After a court conference in January 2012, D'Amato advised the Plaintiff's brother's friend that the landlord's insurance carrier had made a $100,000 settlement offer and that trial was scheduled to begin approximately six months later.

Three months passed and the Plaintiff heard nothing about a possible resolution of her case.  She asked her brother's friend to contact D'Amato and tell him that she would be willing to settle for $150,000.  The Plaintiff alleges that D'Amato responded only by saying that the case was scheduled for trial on July 9, 2012 and that D'Amato "failed

to communicate with the plaintiff or her representative about the course and conduct of settlement negotiations." *Id.* ¶ 19.

After receiving the Plaintiff's $150,000 settlement request—and, the Plaintiff alleges, after speaking with Defendants Cellino and Barnes—D'Amato drafted a demand letter seeking a $1,000,000 settlement and accusing the insurer of failing to negotiate in good faith. The Plaintiff claims that, based on the facts of this case, D'Amato's $1,000,000 demand—which was for the extent of the landlord's insurance coverage—was "patently unrealistic." *Id.* ¶ 30. The Plaintiff alleges that D'Amato, Cellino, and Barnes made this settlement demand with the intent of derailing settlement negotiations and ensuring that the case proceeded to trial.

The insurer rejected the $1,000,000 offer but stated that it "remained ready, willing and able to engage in settlement negotiations if the defendants would provide . . . a reasonable settlement demand." *Id.* The Plaintiff alleges that no one at Cellino & Barnes advised her of the $1,000,000 demand letter, nor did anyone advise her that the insurer had told D'Amato that it was willing to negotiate a more "reasonable" settlement.

The Plaintiff alleges that, because she was not made aware of the status of settlement negotiations, her case proceeded to trial. After jury selection, D'Amato gave the Plaintiff a piece of paper that, the Plaintiff alleges, D'Amato said "was in her best interest to sign." *Id.* ¶ 35. That paper was a "high-low" agreement between the insurer and the Plaintiff: It stated that, if the jury returned a verdict for the Plaintiff, the most she could recover was $750,000, and that if the jury returned a verdict for the Plaintiff's landlord, the Plaintiff would receive $25,000.

The jury returned a verdict for the Plaintiff's landlord. Thus, under the terms of the high-low agreement, the Plaintiff received $25,000. (Although not alleged in the complaint, the record shows that, after fees and expenses, the Plaintiff received $7,256.30. Docket No. 15 at 21.)

The Plaintiff then filed the complaint in this case. She originally brought claims for (1) civil conspiracy; (2) misrepresentation; (3) a violation of New York Judiciary Law § 487; (4) legal malpractice; and (5) violations of New York General Business Law § 349 and § 350. The Plaintiff also sought punitive damages.

The Defendants, through counsel, asked the Plaintiff to withdraw Count 1 (civil conspiracy), Count 3 (Judiciary Law § 487), Count 5 (General Business Law § 349 and § 350), and her claim for punitive damages. Plaintiff's counsel refused to withdraw the claims.

The Defendants then moved to dismiss the causes of action listed above, and they also moved for sanctions pursuant to Federal Rule of Civil Procedure 11. In response, the Plaintiff withdrew Counts 1, 2, and 5, as well as her claim for punitive damages, leaving only her claim for legal malpractice (which the Defendants did not move to dismiss) and her claim under Judiciary Law § 487.

Judge Scott filed an R&R that (1) recommends dismissing the Judiciary Law § 487 claim because the Defendants have not been criminally convicted of violating § 487, as the R&R concluded § 487 requires; and (2) recommends sanctioning Plaintiff's counsel $2,000 for not withdrawing Counts 1, 2, and 5 until after the Defendants moved to dismiss those claims, as well as for responding to Defense counsel's Rule 11 safe-harbor letter with a letter that, Judge Scott concluded, was "calculated to intimidate defense counsel."

Docket No. 20 at 28. The Plaintiff objects to each of these recommendations. The Court reviews the recommendations *de novo.* 28 U.S.C. § 636(b)(1).

**DISCUSSION**

### 1. The Defendants' motion to dismiss the Judiciary Law § 487 claim

The R&R first recommends dismissing the Plaintiff's claim under New York Judiciary Law § 487. Section 487 provides, in relevant part, as follows:

> An attorney or counselor who[] [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

The R&R concluded that the statute's text—in particular, the phrase "in addition to"—requires that an attorney be convicted of violating § 487 *before* the attorney's client may seek treble damages. Based on that interpretation, the R&R recommended granting the Defendants' motion to dismiss the Plaintiff's § 487 claim because the Defendants have not been convicted of violating § 487.

The Plaintiff objects to this recommendation. She also objects to the Defendants' argument that, even if a conviction is not required, she has failed to allege sufficient facts to state a claim under § 487. The Court addresses each argument in turn.

### a. Whether a conviction for violating § 487 is a condition precedent to a civil suit under § 487

Because the Court sits in diversity in this case, its "job . . . is carefully to predict how the [New York Court of Appeals] would resolve [any] uncertainty or ambiguity" in New York law. *Travelers Inc. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). If the Court of Appeals has not decided a particular question of New York law, a federal court sitting in diversity should "apply the law as interpreted by New York's intermediate

appellate courts . . . unless [the federal court] finds[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999). Finally, state trial court decisions "are entitled to consideration as an indication of what state law is, but in and of themselves they are not controlling on the federal courts, especially if they are not regarded as precedents within the state itself." 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4507, at 153 (3d ed. 2016) (hereinafter "Wright & Miller")

The New York Court of Appeals, which has interpreted § 487 only a handful of times, has not addressed the issue identified by the R&R. However, several decisions from intermediate appellate courts and trial courts in New York have done so. Most recently, in *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226 (1st Dep't 1999), the First Department observed that, "[a]lthough a violation of § 487 is also a misdemeanor, a criminal conviction is not a condition precedent to a civil action pursuant to the section." *Id.* at 228. In support of that conclusion, *Schindler* cited *Wiggins v. Gordon*, 115 Misc. 2d 1071 (N.Y. Civ. Ct. 1982), a decision of the New York City Civil Court, which concluded that "a criminal conviction [is not] a condition precedent to the civil use of Section 487." *Id.* at 1075-76.

*Wiggins*, in turn, relied on three authorities for its conclusion. The first, *Fields v. Turner*, 1 Misc. 2d 679, 681 (Sup. Ct. N.Y. Co. 1955), a decision of the New York Supreme Court (New York's trial court of general jurisdiction), concluded that, "in the absence of a clear and unmistakable statement that the civil action [in § 487] may be brought only after a criminal conviction," the court could not "draw[]" "such [an] interpretation . . . from the language" in the statute." *Id.* at 544. *See also id.* ("Civil remedies as a general rule are

not affected in any manner by the pendency or outcome of a criminal prosecution. Where a statute grants a civil as well as a criminal remedy, the two are separable.") (citation omitted). In the second authority *Wiggins* relied on, *People v. Connolly*, 3 A.D.2d 943 (2d Dep't 1957), the Second Department concluded—albeit, in a summary order—that "[i]t is immaterial that section [487] of the [Judiciary] Law also provides in the disjunctive that a deceit practiced upon a party is not only a misdemeanor but that the party injured may recover treble damages."[1] *Id.* at 943. And, finally, the third authority *Wiggins* relied on was "the commentary contained in *McKinney's* treatise on statutes," which stated that "'[w]here a penal statute is such that it is a hybrid of civil and criminal remedies capable of definite severance, that part of it which relates to and grants a civil remedy must be read separate and distinct from the part of it which is penal in character and viewed as a separate and independent enactment and construed and interpreted accordingly.'" 115 Mic. 2d at 1076 (quoting McKinney's Cons. Laws of N.Y., Book 1, Statutes, § 275).

Thus, several lower courts in New York have interpreted § 487 to *not* require a conviction before a civil suit can be brought, and no court appears to have held otherwise. The R&R acknowledged this line of authority but declined to follow it for various reasons, including that *Schindler* inserted a "selectively placed ellipsis" in its quotation of § 487; that *Connolly* "was not addressing the situation at hand here"; and that *Fields* is "unpersuasive" "[i]n the face of the statute's clear language." Docket No. 20 at 20-23.

The Court's job, however, is not to decide whether these decisions are correct. Rather, the Court is "*bound* to apply the law as interpreted by [New York's] intermediate appellate courts unless [it] find[s] persuasive evidence that the [New York Court of

---

[1] *Connolly* interpreted § 273 of the New York Penal Law, which was later "transferred . . . to the Judiciary Law as section 487." *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 268 (N.Y. 2009).

Appeals] . . . would reach a different conclusion." *Blake v. Gonzales*, 481 F.3d 152, 157 n.3 (2d Cir. 2007) (Sotomayor, J.) (emphasis added). *See also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 398 (2d Cir. 2001) ("The holding of 'an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940) (ellipsis omitted). And while the Court is not bound to apply the rulings of New York's trial courts, those rulings are still "helpful to consider." *Id.*

The Court has not been not presented with, nor has it found, "persuasive evidence" that the New York Court of Appeals would interpret § 487 differently than any other New York court has. To the contrary, statements by the Court of Appeals, though perhaps "technically dictum," provide "evidence of how the [Court of Appeals] would decide" this issue. Wright & Miller, § 4507 at 157.[2] Specifically, the Court of Appeals has rejected an interpretation of § 487 that would limit the statute's reach to only completed (rather than attempted) acts of deceit, observing, among other things, that such an interpretation "would run counter to the statute's evident intent to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function." *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 269 (N.Y. 2009).

An interpretation of § 487 that made a criminal conviction a condition precedent to a civil suit would likely gut § 487 of its civil cause of action. As one New York court has

---

[2] *See also* Hon. Judith S. Kaye & Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York*, 69 Fordham L. Rev. 373, 376 (2000) (observing that, when a state high court has not decided a question of state law, "federal courts must act as 'another court of the State' and choose from a variety of sources, including high court dicta and lower court rulings") (footnotes omitted; quoting *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108 (1945)).

observed, "there is a dearth of criminal cases brought under Judiciary Law § 487." *People v. Canale*, 240 A.D.2d 839, 841 (3d Dep't 1997). As a practical matter, then, the R&R's interpretation of § 487 would read any civil remedy out of the statute. In light of the statute's "evident intent" of ensuring that attorneys act with "'utmost good faith in the conduct and management of the business intrusted to them,'" *Amalfitano*, 903 N.E.2d at 268 (quoting *Looff v. Lawton*, 14 Hun 588, 590 (2d Dep't 1878)), the Court is not persuaded that the Court of Appeals would interpret § 487 in a way that, as a practical matter, would render the statute's civil remedy useless.[3]

To be sure, the Court of Appeals has observed that § 487 "is not a codification of a common-law cause of action for fraud" but is, instead, "a unique statute of ancient origin in the criminal law of England." *Id.* at 268. Indeed, from 1881 until 1965, the predecessors to § 487 were found in New York Penal Law, rather than in New York Judiciary Law. *Id.* at 268. This *could* suggest that the Court of Appeals would, as the R&R did, interpret § 487 to be, first and foremost, a criminal statute that imposes civil penalties *on top of*

---

[3] To the extent that § 487's text is ambiguous, the New York Court of Appeals would not be prohibited from using the statute's purpose to resolve the ambiguity. To the contrary, New York courts may look to "the policy considerations addressed by . . . legislation" to "appropriately inform [a court's] decision" when interpreting a statute. *Banque Worms v. BankAmerica Int'l*, 570 N.E.2d 189, 371 (N.Y. 1991). New York courts "begin" statutory "interpretation . . . with an examination of the 'language itself,'" but "where a statute does not expressly address the issue, 'the reach of the statute ultimately becomes a matter of judgment upon review of the legislative goal.'" *Brothers v. Florence*, 739 N.E.2d 733, 736 (N.Y. 2000) (citation and quotation marks omitted). *See also Kimmel v. State*, 80 N.E.3d 370, 397 (N.Y. 2017) ("Although the plain language of the statute provides the best evidence of legislative intent, the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear because the primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent.") (quotation marks and brackets omitted). This further supports the Court's conclusion that the Court of Appeals would not interpret § 487 in a way that would so undermine the practical availability of the statute's civil remedies. *See* McKinney's Cons. Laws of N.Y., Book 1, Statutes § 144, cmt. ("A construction which would render a statute ineffective must be avoided, and as between two constructions of an act, one of which renders it practically nugatory and the other enables the evident purposes of the Legislature to be effected, the latter is preferred.")

criminal penalties.[4]  But the Court of Appeals has not interpreted § 487 this way, and two decisions from New York's intermediate appellate court have rejected similar arguments. A federal court sitting in diversity "is not free to reject the state rule merely because it has not received the sanction of the highest state court, even [if] it thinks the rule is unsound in principle or that another is preferable."  *West*, 311 U.S. at 236-37.  The Court, in other words, may not apply what it believes to be the best interpretation of § 487.  It must instead "predict how the [New York Court of Appeals] would resolve an ambiguity in state law."  *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).

Thus, the Court is not persuaded that the New York Court of Appeals would overrule the decisions of the several lower courts in New York that have held that a criminal conviction under § 487 is not a condition precedent for a civil suit.  In the absence of any persuasive evidence that the Court of Appeals would do so, the Court is "bound to apply the law as interpreted by" New York's intermediate appellate courts.  *Blake*, 481 F.3d at 157 n.3.  The Court therefore concludes that a criminal conviction for violating § 487 is *not* a condition precedent to bringing a civil claim under § 487.

### b.  Whether the Plaintiff's allegations state a claim under § 487

In addition to disputing whether a civil claim under § 487 requires a prior criminal conviction, the parties dispute whether the Plaintiff has alleged sufficient facts to state a claim that the Defendants are "guilty of any deceit or collusion," as § 487 requires.  As the

---

[4]  The R&R also observed that the Court of Appeals "implicitly recognized the dependence of the civil penalty on the criminal conviction when it assessed the history of Section 487 and wrote that, in the late 19th century, '[t]he Legislature later codified this misdemeanor crime *and the additional* civil forfeiture remedy as section 148 of the Penal Code of 1881.'"  Docket No. 20 at 19 (quoting *Amalfitano*, 903 N.E.2d at 268; emphasis in R&R).  Although, as noted above, a federal court may look to a state high court's *dicta* to interpret a state statute, the Court does not believe that, with this statement, the Court of Appeals intended to quietly upend a half-century's worth of lower court decisions interpreting § 487.

Second Circuit has observed, "some courts in New York have imposed an additional prerequisite to recovery" under § 487: "that the plaintiff . . . show 'a chronic and extreme pattern' of legal delinquency by the defendant." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (citing cases). But as the Second Circuit has also noted, "[t]hat requirement appears nowhere in the text of the statute, . . . and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act." *Id.*

The Court need not decide which of these standards is correct, because even under the stricter "chronic and extreme pattern of legal delinquency" standard, the Plaintiff has stated a claim. The amended complaint alleges that, in January 2012, D'Amato advised the Plaintiff that her landlord's insurance carrier had made a $100,000 settlement offer. Docket No. 9 ¶ 16. The complaint then alleges that D'Amato let "more than three months" pass with "no communication . . . about whether anything was happening with the resolution of [the Plaintiff's] case," *id.* ¶ 17, and that, when the Plaintiff contacted D'Amato about a possible $150,000 settlement, he "responded . . . by advising the plaintiff . . . that the case was scheduled to go forward to trial . . . and failed to communicate with the plaintiff or her representative about the course and conduct of settlement negotiations." *Id.* ¶ 19.

Following that, the complaint alleges, D'Amato drafted a letter accusing the insurance carrier of negotiating in bad faith and demanding a $1,000,000 settlement. The complaint alleges that D'Amato's demand "was patently unrealistic" and that the letter's only purpose was "to put the case in a trial posture which the plaintiff desperately wanted to avoid." *Id.* ¶¶ 27-30. The complaint claims that the Defendants then failed to advise the Plaintiff that her landlord's insurer had rejected D'Amato's settlement offer but had

"indicat[ed] that it remain[ed] ready, willing and able to negotiate the plaintiff's claims should the defendants provide a reasonable settlement demand." *Id.* ¶ 33. Finally, the complaint alleges that, after jury selection, D'Amato told the Plaintiff—who spoke no English—that it would be "in her best interest" to sign the high-low agreement, even though the agreement's terms "were favorable to the [insurance] carrier and very detrimental to the plaintiff so that they could attempt to secure a larger attorneys fee by trying plaintiff's case and limit[ing] their risk on any outstanding litigation expenses." *Id.* ¶¶ 35-38.

At this stage of the case, the Court must "accept[] all [of these] factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). Doing so, the complaint plausibly alleges that the Defendants took a number of steps whose purpose was to increase their chances of a high fee recovery, rather than to settle the case for the figure the Plaintiff desired. Drawing all reasonable inferences in the Plaintiff's favor, the Plaintiff has alleged more than "a possible professional lapse," as the Defendants claim. Docket No. 24 at 9. She has instead plausibly alleged a "chronic and extreme pattern of legal delinquency": failing to communicate over the course of many months about possible settlement; ignoring the Plaintiff's request to seek a settlement close to the insurer's original settlement offer; sending a "patently unreasonable" demand letter that accused the insurer of negotiating in bad faith; most critically, failing to tell the Plaintiff about the insurer's offer to continue settlement discussions, particularly when the Plaintiff's requested settlement figure ($150,000) and the insurer's original settlement figure ($100,000) were relatively close; and telling the non-English speaking Plaintiff, with

inadequate explanation, to sign a high-low agreement that would guarantee the Plaintiff a recovery that was barely enough to cover the Defendants' costs and expenses.

These facts—taken together and assumed to be true—are sufficient to state a claim under the more restrictive interpretation of § 487.

\*       \*       \*

For the reasons stated above, the Court declines to adopt the R&R to the extent it recommends granting the Defendants' motion to dismiss Count 3 of the amended complaint. The Defendants' motion to dismiss (Docket No. 10) is therefore denied.

## 2. The Defendants' sanctions motion

As noted above, the Defendants, through counsel, asked the Plaintiff to withdraw Count 1 (civil conspiracy), Count 3 (Judiciary Law § 487), Count 5 (General Business Law § 349 and § 350), and the Plaintiff's request for punitive damages. As required by Rule 11, *see* Fed. R. Civ. P. 11(c)(2), Defense counsel served Plaintiff's counsel with a "safe-harbor" letter allowing Plaintiff's counsel to withdraw those claims before the Defendants moved for sanctions.

In response to the safe-harbor letter, Plaintiff's counsel stated that, before filing his complaint, he consulted "with an eminently qualified member of the plaintiff's bar, an eminently qualified member of the defense bar and a nationally known legal ethics expert who teaches at a major American law school. Each of these individuals reviewed the complaint and questioned [Plaintiff's counsel] on the particulars of the complaint prior to agreeing to act as a legal expert on this action, if necessary." Docket No. 11-3 at 2. Plaintiff's counsel then recounted the facts of his client's case and stated that Defense counsel's assertions were "an affront to the profession" which he found "to be particularly

offensive in light of the fact that [Plaintiff's counsel] ha[s] a real client who lost sight in one eye and walked away with a few thousand dollars in compensation." *Id.* at 2-3. Plaintiff's counsel refused to withdraw his claims.

The Defendants then filed a motion to dismiss Counts 1, 3, and 5, and they also moved for Rule 11 sanctions. In response, Plaintiff's counsel filed a thorough affidavit explaining his investigation into the facts of this case (Docket No. 15), and he also withdrew Counts 1, 2, and 5, as well as the Plaintiff's claim for punitive damages. The R&R concluded that, "[i]n the absence of any explanation at all, let alone an objectively reasonable one, the Court is left to consider Counts I, II, and V frivolous as of their filing." Docket No. 20 at 27. The R&R also concluded that the Plaintiff's counsel response to Defense counsel's safe-harbor letter "looks utterly frivolous and calculated to intimidate defense counsel." *Id.* at 28. The R&R concluded that Plaintiff's counsel should be sanctioned $2,000. Plaintiff's counsel objects to this recommendation.

As discussed above, the Plaintiff's claim under Judiciary Law § 487 states a claim. Thus, that claim is not sanctionable under Rule 11. The Court therefore considers whether the Plaintiff's since-withdrawn claims for civil conspiracy and violations of General Business Law § 349 and § 350 are sanctionable.

The question as to those claims is whether they were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). This standard is one of "objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (quotation

marks and citation omitted).  Moreover, "[m]erely incorrect legal statements are not sanctionable under Rule 11(b)(2)."  *Id.* at 391.

### a.  Civil conspiracy

It is settled that "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  *See also Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102-03 (N.Y. 1986) ("[A]s we long ago held, a mere conspiracy to commit a tort is never of itself a cause of action. Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.") (quotation marks and citations omitted).

Before the Defendants filed their motion for sanctions, the Plaintiff filed an amended complaint that re-alleged Count 1 as a claim for conversion, rather than conspiracy.  The original Count 1 and the amended Count 1, however, are largely identical: the amended Count I simply alleges that "the purpose of the conspiracy was to convert the plaintiff's complaint in the underlying action into their own property and to prosecute that for their own purposes without any regard to the requests of the client." Docket No. 9 ¶ 48.  But New York "does not recognize conspiracy to commit a tort, including conversion, as an independent cause of action."  *Dickinson v. Igoni*, 76 A.D.3d 943, 945 (2d Dep't 2010).

Importantly, in his affidavit in opposition to the Defendants' Rule 11 motion, Plaintiff's counsel does not explain why a civil conspiracy claim, whether based on a conversion claim or as an independent cause of action, is "warranted . . . by a nonfrivolous argument for . . . modifying[] or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  In the absence of such an explanation, and given the New York Court

of Appeals' unambiguous holdings, the Court is left to conclude that it was objectively

unreasonable to include a claim for civil conspiracy in the Plaintiff's complaint.

### b. General Business Law § 349 and § 350

The fifth claim in the Plaintiff's amended complaint alleged violations of New York

General Business Law § 349 and § 350.  This claim was based on the Plaintiff's allegation

that "the defendants . . . have advertised heavily that the defendants and their 'team of

trial lawyers' are capable of securing just compensation due an injured party."  Docket

No. 9 ¶ 70.  The complaint alleged that, "by employing the term 'team of trial lawyers,'"

the Defendants "intend[] to convey to the general public and to the plaintiff that each

lawyer assigned to a case is either an associate or a member of the firm."  *Id.* ¶ 71.

However, the complaint alleged, "upon information and belief the defendants have

contractual agreements with individual attorneys who are not employees of the firm and

who upon further information and belief are compensated on a case by case basis."  *Id.*

¶ 72.  Thus, the complaint alleges, "by using the term 'team of trial lawyers' . . . Cellino

and Barnes is attempting to project a relationship that does not in fact exist and the actual

relationship between the assigned attorney, the firm and client creates an irrevocable

conflict of interest for the assigned attorney.  The assigned attorney has dual loyalties to

the firm as an independent contractor and to the client, and those dual loyalties in the

underlying case giving rise to this action, were never disclosed to the plaintiff and are

never disclosed to the public at large."  *Id.* ¶ 73.

General Business Law § 349 prohibits "deceptive acts or practices in the conduct

of any business, trade or commerce or in the furnishing of any service in [New York

State]."  N.Y. Gen. Bus. Law § 349(a).  "To state a claim for a § 349 violation, 'a plaintiff

must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E. 2d 834, 838 (N.Y. 2009)).  "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).

The Defendants argue that Rule 11 sanctions are appropriate for Count 5 because Plaintiff's counsel "engaged in frivolous conduct by claiming . . . that Defendants somehow violated General Business Law § 349 and § 350." Docket No. 11-10 at 16.  The Defendants argue that the Plaintiff's claim is based on "the alleged way Cellino & Barnes allegedly classifies its attorneys for its own taxation and Workers' Compensation purposes," a classification that is not "consumer-oriented in any way" but which instead "speaks only to the firm's internal business practices and business model." *Id.* at 17.  In addition, the Defendants argue, "the way Cellino & Barnes classifies its attorneys for tax purposes could [not] be materially misleading in any way. *Id.*  Indeed, the Defendants note that it is both permissible and common practice for law firms to "hir[e] independent contractor or 'of counsel' attorneys." *Id.* at 17-21.

The Defendants' Rule 11 motion shows that the Plaintiff's General Business Law § 349 and § 350 claims *may* not have survived a motion to dismiss or a motion for summary judgment.[5]  But "[t]he mere failure of a [claim] to survive a motion to dismiss does not by itself establish a violation of Rule 11." *Phinisee v. Layser*, Civil Action No.

---

[5]  The Court offers no opinion on this question.

14-3896, 2014 WL 7177379, at *2 (E.D. Pa. Dec. 16, 2014).  *See also Tyler v. Cashflow Techs., Inc.*, 2016 WL 6538006, at *3 (W.D. Va. Nov. 3, 2016) ("While certain legal claims may not survive a motion to dismiss, a sanction under Rule 11 is entirely different.  'Only the lack of any legal or factual basis is sanctionable.'") (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)).   The Plaintiff's allegations about the Defendants' advertising practices, taken as true, appear to at least suggest that Plaintiff's counsel had a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. 11(b)(2).  *See also* Docket No. 15 ¶ 42 (Plaintiff's counsel noting that he "consult[ed] with a legal ethicist regarding the viability of false advertising and deceptive business practices who advised [Plaintiff's counsel] that if [he] could establish that the firm's practices were at odds with[] their advertisements to the general public then a viable claim might exist"); 1993 Advisory Committee Note (ACN) to Rule 11(b) ("[T]he extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether [Rule 11(b)(2)] has been violated.")

Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  *See also Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 34-35 (2d Cir. 1992) ("When divining the point at which an argument turns from merely losing to losing *and* sanctionable, we have instructed district courts to resolve all doubts in favor of the signer.") (quotation marks and citations omitted; emphasis in original).   Doing so here, particularly in light of Plaintiff's counsel's pre-complaint investigation, the Court cannot conclude that the Plaintiff's

General Business Law § 349 and § 350 claim was objectively unreasonable.  Thus, Rule 11 sanctions are not warranted for those claims.

### c.  Other bases for sanctions

The R&R, as noted, concluded that sanctions are warranted because of Plaintiff's counsel's response to Defense counsel's safe-harbor letter.  Plaintiff's counsel's letter, however, is not a basis for Rule 11 sanctions.  The Rule only allows a court to sanction an attorney based on his or her "pleading[s], written motion[s], or other paper[s]" that are "present[ed] to the court."  Fed. R. Civ. P. 11(b).  *See also* 1993 ACN to Rule 11(b) ("The rule applies only to assertions contained in papers filed with or submitted to the court.")  The letter at issue was not sent to the court; rather, it was sent to defense counsel.

Further, the Defendants' opposition to the Plaintiff's objections suggests that sanctions are also appropriate because Count 2 (the Plaintiff's misrepresentation claim) was allegedly frivolous.  *See* Docket No. 24 at 3 ("Defendants also correctly stated that Plaintiff's misrepresentation claim was duplicative of her legal malpractice claim.")  However, the Defendants' Rule 11 motion only sought sanctions for Counts 1, 3, and 5.  *See* Docket No. 11.  A motion for sanctions under Rule 11 "must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Because the Defendants did not seek sanctions for Count 2, the Court may not impose sanctions for that Count.

### d.  Whether sanctions are warranted

As noted, the only basis for Rule 11 sanctions is the Plaintiff's inclusion of a civil conspiracy claim that Plaintiff's counsel does not suggest is "warranted by . . . a

nonfrivolous argument for . . . modifying[] or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Rule 11(c)(4) states that a Rule 11 sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from th[e] violation."

Several mitigating factors are present here. First, the Court has concluded that sanctions are appropriate for only one count in the complaint. Although it required the Defendants to file a motion to dismiss, the Court is doubtful that, given the straightforward basis for dismissal, Defense counsel had to expend any significant time researching and drafting her motion. Thus, the Plaintiff's civil conspiracy claim had a limited "effect . . . on the litigation process in time or expense." 1993 ACN to Rule 11(b). In other words, the inclusion of a civil conspiracy claim in the complaint was not particularly egregious conduct. Second, Plaintiff's counsel re-pled Count 1 before the Defendants moved for sanctions, and he did so in a way that, to at least some degree, responded to the issues raised in Defense counsel's safe-harbor letter. Although amended Count 1 likely would have also been dismissed, Plaintiff's counsel's actions demonstrate that he did not entirely ignore the safe-harbor letter's legal claims. These considerations, however, must be balanced against the aggravating factor the R&R identified: Plaintiff's counsel did not withdraw Counts 1, 2, and 5 until *after* the Defendants filed their motion to dismiss.

After carefully balancing these factors, the Court concludes that a $500 sanction is "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Because Rule 11 sanctions are meant, in the first instance, "to deter rather than to compensate," 1993 ACN to Rule 11(b), it is appropriate for Plaintiff's counsel to make payment to the Clerk of Court, rather than to Defense counsel's law firm, as the R&R recommends.

## CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss (Docket No. 10) is denied, and the Defendants' sanctions motion (Docket No. 11) is granted in part. The Court adopts the R&R's recommendation to impose Rule 11 sanctions, but as discussed above, the Court sanctions Plaintiff's counsel $500, and only for the inclusion of a civil conspiracy claim in the Plaintiff's complaint. Plaintiff's counsel shall pay $500, by check or money order made payable to "Clerk of Court," within 30 days of the date of this Decision and Order.

This case is recommitted to Judge Scott for further proceedings. To ensure that this case moves forward expeditiously, any further dispositive motions shall be made returnable before the undersigned.

**SO ORDERED.**

Dated: April 17, 2018                        *s/Richard J. Arcara*
      Buffalo, New York                  HONORABLE RICHARD J. ARCARA
                                          UNITED STATES DISTRICT JUDGE